UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SERAFIM GEORGIOS KATERGARIS,<br><br>*Plaintiff*,<br><br>v.<br><br>CITY OF NEW YORK,<br><br>*Defendant*. | Case No. _22-cv-7400_ |

**VERIFIED CIVIL RIGHTS CLASS ACTION COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.      New York City (the "City"), through its Department of Buildings ("DOB"), issues certain fines to city property owners without providing a hearing or an opportunity to appeal the fines. Property owners receiving such fines have one option: pay the City.

2.      Issuing fines to property owners without giving them an opportunity to contest the fines or appeal an adverse decision deprives these owners of the process due them under the U.S. Constitution.

3.      The "fundamental requisite of due process of law is the opportunity to be heard." *Burtnieks v. City of New York*, 716 F.2d 982, 986 (2d Cir. 1983) (cleaned up). When the City issues such tickets to property owners, it does not provide a hearing of any kind, give property owners the opportunity to build a record, offer a chance to present or respond to legal arguments, or provide a neutral—or, indeed, any—adjudicator. Any decisions it makes are completely

within its discretion, and the City need not furnish an explanation when it does issue a decision. The City also does not provide a right to appeal to court of any kind.

4.      This system of nonreviewable penalties is an absence of process. No process is not, and cannot be, due process.

5.      The City issued such a nonreviewable penalty to Plaintiff Serafim Georgios Katergaris ("Mr. Katergaris," or "Plaintiff"). The City cited him for failing to file a boiler inspection report relating to his home in Harlem. However, he did not own the building when the boiler inspection report should have been filed. In fact, by the time he had bought the building, it no longer had a boiler, and the DOB knew this because a previous owner had filed documents with the DOB that showed there was no boiler.

6.      The City thus penalized him for failing to file a report about a boiler he had never owned located in a building he had yet to buy.

7.      He brings this case on his own behalf and on behalf of all others similarly situated to force the City to abide by fundamental constitutional requirements in its administrative procedures.

8.      The government has a legitimate interest in ensuring that boilers are safe. The City's efforts to pursue this interest must be consistent with the U.S. Constitution, however, and the Constitution requires the City to provide a hearing to those it punishes and the ability to appeal an adverse decision. Because the City does not provide even rudimentary process, its policy and practice of imposing fines with no way to challenge them is unconstitutional.

JURISDICTION AND VENUE

9.      Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

10.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims alleged in this Complaint occurred in this district and because the property that is the subject of this action lies in this district.

PARTIES

12.     Mr. Katergaris is a resident of New York, New York. He previously owned a home in Harlem located at 124 W. 132nd St., New York, New York 10027-7802 (the "Property").

13.     He purchased the Property with his then-wife in November 2014 and sold it in June 2021.

14.     Defendant City of New York is a municipal corporation organized under the constitution and laws of the State of New York.

15.     The City's officers and employees carry out the City's unconstitutional and procedurally deficient policies and practices associated with prosecuting violations of the City's Construction Codes.

FACTUAL ALLEGATIONS

**The City's Boiler-Inspection Violation Process**

16.     New York law defines "boiler" to mean:

> a closed vessel in which water is heated, steam is generated, steam is superheated, or any combination thereof, under pressure or vacuum for use externally to itself by the application of heat from combustible fuels, electricity, or any other source, but shall not include a device or apparatus used solely to heat water for a hot water supply system. The term "boiler" shall include the apparatus used by which heat is generated, and all controls and devices related to such apparatus or to the closed vessel. The term "boiler" also shall include fired units for heating or vaporizing liquids other

3

> than water where these units are separate from processing systems and are complete within themselves.

N.Y. Lab. Law § 204(6).

17.     The City categorizes boilers as either high-pressure or low-pressure.

18.     The City mandates annual inspections for low-pressure boilers located in: (1) residential buildings with six or more families, (2) commercial and mixed-use buildings, and (3) residential buildings classified as Single Room Occupancy dwellings. N.Y.C. Admin. Code § 27-793(b)(1); 1 R.C.N.Y. § 103-01; *Boiler Compliance*, NYC Buildings, https://www1.nyc.gov/site/buildings/safety/boiler-compliance.page (last visited Aug. 29, 2022). This webpage is attached to this Complaint as Exhibit 1 and is incorporated into the Complaint by reference.

19.     The owner of the boiler must, in most cases, file a written statement annually specifying the location of the boiler and indicating whether the owner has had the boiler inspected by an approved inspector. N.Y.C. Admin. Code § 27-793(c)(1). This statement must be accompanied by a signed copy of the boiler inspection report. *Id*.

20.     All inspection reports must be filed with the City within 14 days of the date of the boiler inspection, but in no event later than January 14 of the calendar year immediately following the inspection cycle. 1 R.C.N.Y. § 103-01(c)(1), (4); *Boiler Compliance*, NYC Buildings, https://www1.nyc.gov/site/buildings/safety/boiler-compliance.page (last visited Aug. 29, 2022).

21.     If the owner of the boiler files the statement and report late, the City imposes a $50.00 penalty for each month that it is late, up to a maximum of $600.00. 1 R.C.N.Y. § 103-01(f)(2).

22.    If a boiler owner fails to file the report, the City penalizes the owner a sum of not

less than $1,000.00. 1 R.C.N.Y. § 103-01(f)(1).

23.    The boiler owner

> may challenge the imposition of any civil penalty authorized to be imposed . . . by
> providing written proof of a timely and complete inspection and filing to the
> department. Challenges shall be made in writing within thirty (30) days from the
> date of service of the violation by the department and sent to the office/unit of the
> department that issued the violation. *The decision to dismiss or uphold the penalty
> shall be at the sole discretion of the department*.

1 R.C.N.Y. § 103-01(f)(4) (emphasis added).

24.    Thus, there is only one defense a boiler owner may raise: that they had the boiler

inspected and filed the report on time. Even then, the DOB has complete discretion to uphold or

dismiss.

25.    The City does not provide a hearing for any challenge.

26.    The City does not provide any appeal for the boiler owner to challenge an adverse

decision (or the failure to issue a decision) by the DOB.

27.    While the failure to file a boiler inspection statement and report results in a

penalty, the DOB does not immediately issue that penalty.

28.    Instead, there is a gap between when the violation occurs, or the DOB notes,

documents, or records the violation, and when the DOB issues a notice of violation. For calendar

year 2013—the relevant year for Mr. Katergaris's claim—the DOB did not issue notices of

violation for failure to file a boiler statement and report that accrued in 2013 until March 3, 2015,

nearly two years later. *See Civil Penalty Reference Chart for Low- & High-Pressure Boilers*,

NYC Buildings, https://www1.nyc.gov/site/buildings/safety/civil-penalty-reference-chart-for-

low-high-pressure-boilers.page (last visited Aug. 29, 2022). This webpage is attached to this

Complaint as Exhibit 2 and is incorporated into the Complaint by reference.

29.     The lengthy delay in when DOB issues notices of violations creates a problem for new purchasers because violations do not appear in the title search or as a lien until the DOB issues the notice of violation and serves it on whomever is the current owner of the building. So, someone who unknowingly purchased property from an owner who had failed to file a report in a prior year may only find out about the penalty for the past owner's violation after they already purchased the property. Having purchased the property, the violation becomes theirs to resolve.

30.     The purchaser cannot challenge the penalty, however. The most he can do is request a waiver of the penalty pursuant to the DOB's limited and unappealable waiver process.

31.     The boiler owner may request a waiver of the penalty from the DOB based on certain criteria established by the DOB. 1 R.C.N.Y. § 103-01(f)(6).

32.     In April 2021, the City's ordinances provided that a boiler owner may qualify for a waiver only under specific, narrow circumstances, and then only pursuant to the DOB's unbridled discretion:

- A new owner who is tax exempt or took title to the property as part of a government-sponsored economic development program;

- The property was owned by the government during the entire calendar year the boiler should have been inspected;

- The owner had petitioned for bankruptcy and served the City with a particular bankruptcy document;

- The boiler had been removed or disconnected before the calendar year began;

- The boiler was either new or had been replaced during the calendar year;

- The boiler was in the process of being replaced or deactivated temporarily during a renovation;

- The building was properly demolished before the calendar year; or

- The building had been ordered sealed or vacated during the calendar year.

1 R.C.N.Y. § 103-01(f)(5) (rule effective April 21, 2021). A copy of this then-effective rule is attached to this Complaint as Exhibit 3 and is incorporated into this Complaint by reference.

33.     The City changed the language of this rule in December 2021, effective January 15, 2022. The DOB's website nonetheless still lists the standards from the previous version of the rule, and it appears that the repealed standards are the ones that the DOB enforces.

34.     Specifically, the City's extant DOB website describes the circumstances under which it will grant a waiver for a property owner who did not own the premises and/or boiler that was the subject of the notice of violation for failing to file an inspection report:

> The Department of Buildings does not grant automatic waivers of boiler violations issued to a prior owner. There are limited circumstances, and violation waivers are typically granted only under those circumstances. A final decision will be at the discretion of the Department. You may submit a Boiler Waiver of Civil Penalties request in DOB NOW: *Safety*. See **Can I get the violation waived?** for instructions on submitting a waiver if one of the below reasons applies:
>
> - The new owner has obtained full tax exemption status from the NYC Department of Finance.
>
> - The new owner submits proof (such as a certificate from the NYC Department of Housing Preservation and Development) that he/she took title of the property as part of an economic development program sponsored by a government agency.
>
> - The new owner filed bankruptcy and provides copy of a bankruptcy petition and proof that the Department was served with a Notice of Bar Date. The final determination for bankruptcy waivers is made by the DOB Legal Department.
>
> - The property was demolished before or during that inspection year and the owner can provide a full demolition permit that was signed off by DOB.
>
> - The property was formerly owned by a city, state, federal or foreign entity and the new owner can provide satisfactory evidence of this ownership.
>
> - The property was purchased through an HPD Third Party Transfer Program and HPD provides a letter stating which boiler violations to waive.

- The boiler was replaced under a DOB boiler permit or Limited Alteration Application (LAA) permit during that inspection year and passed inspection that same year or the following year.

- First Test Inspection of the boiler was performed during that inspection year.

Please note that transfers of ownership between related parties such as family members (including inheritances), business partners or subsidiaries of the same parent company are not considered change of ownership.

*Boiler Frequently Asked Questions*, NYC Buildings,

https://www1.nyc.gov/site/buildings/safety/boiler-frequently-asked-questions.page (drop down

from "**I am a new owner and didn't own the property at the time of violation. Can the**

**violation be waived?**" tab) (last visited Aug. 29, 2022). A copy of this webpage is attached to

this Complaint as Exhibit 4 and is incorporated into this Complaint by reference.

35.    The current (but apparently unenforced) standards for a waiver are as follows:

- A new owner who shows that the property was transferred to them *after* penalties were incurred;

- The property was owned by the government during the calendar year the boiler should have been inspected;

- The owner had petitioned for bankruptcy and received a decision from a bankruptcy court;

- The boiler had been removed or disconnected before the calendar year began;

- The boiler was either new or had been replaced during the calendar year;

- The boiler was in the process of being replaced or deactivated temporarily during a renovation;

- The building was properly demolished before the calendar year; or

- The building had been ordered sealed or vacated during the calendar year.

1 R.C.N.Y. § 103-01(f)(6).

36.    Regardless of which standards the DOB applies or applied, the waiver, if granted, applies only to the penalties imposed by the City; the violation survives. *See* 1 R.C.N.Y. § 103-01(c)(8) ("**Waiver.** Removal of the obligation to pay a penalty associated with a violation. A waiver does not result in dismissal of the violation.").

37.    Incurring a violation comes with significant consequences separate from the penalty for the person receiving a violation.

38.    For instance, "DOB violation information is public and will appear in a property title search. Open violations can prevent an owner from selling or refinancing. The Department will not issue new or amended Certificates of Occupancy or Letters of Completion when DOB violations remain active." *What Is a DOB Violation?*, NYC Buildings, https://www1.nyc.gov/site/buildings/property-or-business-owner/what-is-a-dob-violation.page (last visited Aug. 29, 2022). This webpage is attached to this Complaint as Exhibit 5 and is incorporated into the Complaint by reference.

39.    Specifically, all notices of violation are public information and, once issued, the City places the information online on the Buildings Information System (BIS).

40.    BIS is a database that users can search by address. Banks and title companies check the information when conducting property title searches, and open violations can prevent an owner from selling or refinancing.

41.    Finally, "DOB violations issued for serious conditions may result in a Criminal Court summons being issued and prosecution." *Resolve a Summons or Violation*, NYC Buildings, https://www1.nyc.gov/site/buildings/dob/resolve-a-summons-or-violation.page (last visited Aug. 29, 2022). This webpage is attached to this Complaint as Exhibit 6 and is incorporated into the Complaint by reference.

42.    There is only one way to remove a violation from a property record: "To remove a DOB violation from a property record, the condition must be corrected and proof of that correction must be provided to the issuing unit." *DOB Violations*, NYC Buildings, https://www1.nyc.gov/site/buildings/safety/dob-violations.page (last visited Aug. 29, 2022). This webpage is attached to this Complaint as Exhibit 7 and is incorporated into the Complaint by reference.

43.    There is no hearing associated with a waiver request—the DOB simply grants or denies it. Moreover, as noted above, DOB "does not grant automatic waivers of boiler violations issued to a prior owner. There are limited circumstances, and violation waivers are typically granted only under those circumstances." *Boiler Frequently Asked Questions*, NYC Buildings, https://www1.nyc.gov/site/buildings/safety/boiler-frequently-asked-questions.page (drop down from "**I am a new owner and didn't own the property at the time of violation. Can the violation be waived?**" tab) (last visited Aug. 29, 2022).

44.    There is also no right to appeal an adverse decision regarding the request for a waiver.

**The DOB Fines Mr. Katergaris for Failing to File a Boiler Inspection Report**

45.    For all or part of 2013, the Property was a residential building for which the City required the filing of an annual low-pressure boiler inspection.

46.    City ordinances required the then-owner of the Property to have the boiler located on the property inspected and to file a boiler inspection report with the DOB for the calendar year 2013.

47.    According to the DOB, the then-owner did not file a boiler inspection report by January 14, 2014, for the calendar year 2013.

48.     On or about April 22, 2013, the then-owner of the Property transferred title to it to an entity named 124 West 132nd St. LLC ("124 West").

49.     Upon information and belief, at some point between April 2013 and November 2014, 124 West removed the boiler from the Property and filed the proper paperwork with the DOB for removing the boiler.

50.     124 West also converted the Property to a two-family residence, meaning that the City would no longer require the owner of the boiler (if there were a boiler, which there was not) to file an annual boiler inspection report with the City going forward.

51.     When Mr. Katergaris and his then-wife were under contract to buy the Property, they reviewed the title report, which gave no indication that the owner had failed to file the 2013 boiler inspection report—a penalty the DOB would not issue for another six months.

52.     On or about November 12, 2014, Mr. Katergaris and his then-wife purchased the property from 124 West.

53.     At the time of closing, neither Mr. Katergaris nor his ex-wife had any knowledge that a past owner had failed to file a boiler inspection report for the calendar year 2013.

54.     By November 19, 2014, the DOB's records were updated to reflect that the Property did not have a boiler that required an annual inspection.

55.     On March 3, 2015, the DOB purportedly issued a notice of violation (the "Notice") to Mr. Katergaris regarding the prior owner(s) failure to file a boiler inspection report for calendar year 2013. A copy of the Notice is attached to this Complaint as Exhibit 8 and is incorporated into this Complaint by reference.

56.     The Notice was addressed to Mr. Katergaris and stated (with emphasis added):

> Our records indicate, based on the type of property and the active low pressure boiler device(s) in our system that *you* are in violation for not

11

having a boiler inspection filed to the New York City Department of Buildings Boiler Division for the 2013 Inspection Cycle Period.

57.     The Notice stated that Mr. Katergaris could resolve the violation by taking the following actions:

<u>How to clear this 2013 annual boiler violation</u>:

☐  Proof of Compliance (Inspection Submitted Timely):
Must provide scanned copy of 2013 BO-9 inspection report and a scanned copy of the front/back of the cashed check/money order to dismiss your annual violation. If an Insurance Company performed the 2013 inspection, request from them an electronic disc tracking number (EDT#) and email your scanned proof to:

Email your proof to: BoilersInfo@buildings.nyc.gov

☐  Full Civil Penalty: a boiler inspection not performed and filed during the 2013 inspection cycle:

- A civil penalty of $1,000 must be paid to DOB, per boiler by cash, certified check or money order ONLY. Personal or Business checks will not be accepted.
- A current inspection must be performed and filed prior to accepting payment.
- Mail/Visit this notice and violation payment to New York City Department of Buildings Boiler Division, 280 Broadway 4th Floor New York, NY 10007.

58.     The Notice did not provide any information regarding whether Mr. Katergaris could request a hearing regarding the Notice.

59.     The City never effectuated service of the Notice on Mr. Katergaris or his then-wife.

60.     Neither Mr. Katergaris nor his then-wife had any knowledge that the Property was subject to the Notice.

61.     Mr. Katergaris and his wife divorced in 2019.

62.    In March 2021, Mr. Katergaris and his ex-wife contracted to sell the Property to a third party.

63.    While the property was under contract for sale in 2021, Mr. Katergaris discovered, through his lawyers, that the title report indicated that the Property had an outstanding unresolved violation—namely, the Notice of Violation dated March 3, 2015, regarding the failure to file a boiler inspection report for calendar year 2013.

64.    The purchaser's title report in 2021 was the first time that Mr. Katergaris and his then-wife learned of the outstanding notice of violation.

65.    In April 2021, Mr. Katergaris requested a waiver from the DOB by paying a $30 application fee and submitting a waiver request through the DOB's platform online.

66.    The DOB denied Mr. Katergaris's waiver request in an email on April 13, 2021: "The Civil Penalty Waiver Request WCPR-BE-0000002457 for violation(s) has been denied by the NYC Department of Buildings for the following reason: Waiver denied. Property is not tax exempt and new owner inherits any violations/potential violations issued before new ownership. See RCNY 103-01 for more info." A copy of the DOB's email to Mr. Katergaris is attached to this Complaint as Exhibit 9 and is incorporated into this Complaint by reference.

67.    Mr. Katergaris's request for a waiver did not constitute a hearing—there was no presentation of arguments, evidence, witnesses, or exhibits, and it was not presided over by a neutral arbiter. Instead, the DOB simply determined that it would not waive the violation it issued.

68.    The DOB's email did not state that Mr. Katergaris could appeal this decision and no such mechanism for appeal exists in the City's ordinances or rules or New York state law.

The two options stated in the email were for him to submit another request for a waiver or to submit the civil penalty.

69.     With his waiver request unsuccessful and wishing for nothing to impede the sale of the Property, Mr. Katergaris paid the violation under protest on June 9, 2021.

70.     That same day, the DOB sent him a receipt via email, with the subject line "Department of Buildings Electronic Filing Payment Confirmation Receipt."

71.     On June 22, 2021, Mr. Katergaris received an email from the DOB stating that the DOB had processed his payment for the violation, with the subject line "Dismissed Violation Payment Tracking No. 1058131-2013-0."

72.     On July 8, 2021, Mr. Katergaris submitted a request to the DOB by email asking that the Department return the money he had paid under protest because he did not own the Property in 2013.

73.     On July 9, 2021, Mr. Katergaris received an email response from Glenis Vanterpool of the DOB's Boiler Unit.

74.     The email read:

Hello Serafim,

**I am a new owner and didn't own the property at the time of violation. Can the violation be waived?**

The Department of Buildings does not grant automatic waivers of boiler violations issued to a prior owner. There are limited circumstances, and violation waivers are typically granted only under those circumstances. A final decision will be at the discretion of the Department. You may submit a Boiler Waiver of Civil Penalties request in DOB NOW: *Safety*. See Question 5 for instructions on submitting a waiver if one of the below reasons applies:

- The new owner has obtained full tax exemption status from the NYC Department of Finance.

- The new owner submits proof (such as a certificate from the NYC Department of Housing Preservation and Development) that he/she took

title of the property as part of an economic development program sponsored by a government agency.

- The new owner filed bankruptcy and provides copy of a bankruptcy petition and proof that the Department was served with a Notice of Bar Date. The final determination for bankruptcy waivers is made by the DOB Legal Department.

- The property was demolished before or during that inspection year and the owner can provide a full demolition permit that was signed off by DOB.

- The property was formerly owned by a city, state, federal or foreign entity and the new owner can provide satisfactory evidence of this ownership.

- The property was purchased through an HPD Third Party Transfer Program and HPD provides a letter stating which boiler violations to waive.

- The boiler was replaced under a DOB boiler permit or Limited Alteration Application (LAA) permit during that inspection year and passed inspection that same year or the following year.

- First Test Inspection of the boiler was performed during that inspection year.

Please note that transfers of ownership between related parties such as family members (including inheritances), business partners or subsidiaries of the same parent company are not considered change of ownership.

To submit a response, reply to this email and do not modify the subject line.

Sincerely,
Glenis Vanterpool
Boiler Unit
www.nyc.gov/dobhelp

A copy of this email is attached to this Complaint as Exhibit 10 and is incorporated into this Complaint by reference.

75.    On or about July 9, 2021, Mr. Katergaris sent a letter to the DOB's Boiler Unit asking the DOB to return the money he paid to the DOB under protest for the 2013 failure-to-file violation.

76.     Sometime between July 9, 2021, and July 20, 2021, Mr. Katergaris called the City's Office of Administrative Trials and Hearings (OATH) asking for a hearing on the violation issued to him by the DOB for the 2013 failure-to-file violation. OATH later returned his call to tell him he should contact the DOB directly.

77.     On August 13, 2021, Mr. Katergaris received a response from the DOB to the letter he sent in July 2021. The response consisted of a copy of Mr. Katergaris's July 2021 letter and a printout of a DOB website announcing its new search portal, which included instructions on how to submit a request for a waiver, which Mr. Katergaris had already done unsuccessfully. A copy of the DOB's response to Mr. Katergaris is attached to this Complaint as Exhibit 11 and is incorporated into this Complaint by reference.

<b>The DOB's System of Unreviewable Violations</b>

78.     The DOB issues violations for which it does not provide the opportunity for a hearing before a neutral adjudicator.

79.     The DOB does not provide any procedures to appeal these violations.

80.     In addition to the failure to file a boiler inspection report, there are many other violations for which the City refuses to provide hearings or appeals. *See Types of DOB Violations*, NYC Buildings, https://www1.nyc.gov/site/buildings/safety/types-of-dob-violations.page (last visited Aug. 29, 2022) A copy of this webpage is attached to this Complaint as Exhibit 12 and is incorporated into this Complaint by reference.

81.     These include certain Façade Violations (applicable to buildings taller than six stories), Elevator Violations, Electrical Violations, and "other types of DOB violations." *Department of Buildings Guide to Violations*, NYC Buildings, 3, https://www1.nyc.gov/assets/buildings/pdf/violations-guide-english.pdf (last visited Aug. 29,

16

2022). A copy of this webpage is attached to this Complaint as Exhibit 13 and is incorporated into this Complaint by reference.

82.    On information and belief, these also include Building Code violations.

83.    For each such violation, there is no process or system in place by which a property owner may request any review or challenge the violations or penalties imposed.

84.    The only thing a respondent may do when they receive an unreviewable violation (referred to by the DOB as "DOB Violations") is to pay the DOB. *See Department of Buildings Guide to Violations*, NYC Buildings, 3, https://www1.nyc.gov/assets/buildings/pdf/violations-guide-english.pdf (last visited Aug. 29, 2022) ("Some violations that we issue do not require you to appear at an ECB hearing, but they may have fines you have to pay. We call these types of violations a 'Department of Buildings violation' or a 'DOB violation.' You must resolve DOB violations quickly because some may accrue interest over time, which can substantially add to the total fine you have to pay.").

85.    While the DOB puts this information on its website, the information does not appear on the violation notice that the DOB provides to a respondent.

### CLASS ACTION ALLEGATIONS

86.    Mr. Katergaris seeks to maintain this action on behalf of himself and all others similarly situated under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

87.    The City's conduct toward Mr. Katergaris is part of a broader policy and practice, in which the City imposes violations on property owners without providing them an opportunity to challenge the violation in front of a neutral adjudicator or an opportunity to appeal.

88.    Mr. Katergaris proposes a putative class with the following proposed class definition:

All people who, since August 30, 2019, have been the subject of a notice of violation
issued, recorded, or written by the Department of Buildings for which the City did not
provide the opportunity for a hearing or the opportunity to appeal.

89.     Mr. Katergaris and members of the class have faced, or will face, the following

pattern of behavior by the City: The City's Department of Buildings issues a notice of violation,

alleging that the property owner violated the code. That notice of violation demands that the

owner pay a penalty to the DOB. It provides no information about how a property owner may

challenge the City's determination that the property owner violated the code or appeal that

decision to a neutral adjudicator. Instead, it simply demands payment. This information is

entered into public records, and the violation attaches to the property. The only way to clear the

violation is to pay the amount the City demands.

90.     Mr. Katergaris and members of the class were not, and will not be, able to

challenge their violations at a hearing. They had no opportunity to build a record for submission

at a hearing. The City issued them notices of violation years after any alleged violation occurred,

leaving them less able to defend themselves effectively because of loss of records, faded

memories, and changes in circumstances or the physical conditions of the property, even if the

City had provided a hearing. The City did not afford them a neutral (or any) adjudicator and

instead made decisions based on its unrestricted discretion. There is no requirement that it

explain its decisions. Finally, the City did not offer them any right or process for appeal.

91.     Accordingly, they have not been, and will not be, able to assert their innocence or

raise any other defense to the imposition of a penalty.

92.     Mr. Katergaris and members of the class have been, or will be, injured by these

practices, which violate the due process clause of the Fourteenth Amendment to the United

States Constitution.

93.     To remedy this policy or practice, Mr. Katergaris seeks to sue on behalf of a class. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since August 30, 2019, hundreds or even thousands of people have been subject to the City's imposition of violations without the opportunity for a hearing. All these unreviewable violations are constitutionally invalid for the same reasons. Allowing all these violations to be challenged in a single lawsuit will avoid needless litigation expense, both for the absent class members and for Defendant.

94.     This class satisfies all the requirements for class certification set forth in Federal Rule for Civil Procedure Rule 23(a).

95.     **Numerosity:** Upon information and belief, and based on documents made public by the City, the City issued unreviewable violations for failing to file a boiler inspection report to 1,300 unique addresses in calendar year 2020 alone. The number of people who have received unreviewable violations for all categories of violation for which the DOB issues such unreviewable violations from August 30, 2019, to August 30, 2022, and beyond is likely significantly higher. The proposed class is thus so numerous that individual joinder of all members is impracticable.

96.     **Commonality:** This action presents questions of law and fact common to the proposed class, resolution of which will not require individualized determinations of the circumstances of any particular plaintiff.

   a.   Common questions of fact include, but are not limited to:

      i.   Does the City provide any opportunity for a hearing for DOB violations?

      ii.   Does the City require the DOB to prove its case after imposing a DOB violation penalty?

     iii.   Does the City allow property owners to present a defense after imposing a DOB violation penalty?

     iv.   Are property owners able to challenge the constitutionality of the City's procedures before a neutral adjudicator?

      v.   Are property owners able to appeal the imposition of a DOB violation to an appellate reviewer?

b.   Common questions of law include, but are not limited to:

      i.   Does the City's imposition of penalties on property owners without a hearing violate the Due Process Clause of the Fourteenth Amendment?

      ii.   Does the City's refusal to require the DOB to prove its case violate the Due Process Clause of the Fourteenth Amendment?

     iii.   Does the absence of an opportunity for a property owner to present a defense to a DOB violation violate the Due Process Clause of the Fourteenth Amendment?

     iv.   Does the absence of an opportunity for a property owner to raise a constitutional challenge to a DOB violation violate the Due Process Clause of the Fourteenth Amendment?

      v.   Does the absence of an opportunity for a property owner to appeal a DOB violation violate the Due Process Clause of the Fourteenth Amendment?

97.   **Typicality:** Mr. Katergaris's claims are typical of the claims of the proposed class. Mr. Katergaris's claims, as well as those of the proposed class, arise out of the same policy, practice, and custom of the City; are based on the same legal theories; and involve the same harms. Additionally, Mr. Katergaris seeks the same relief for himself and members of the proposed class, in the form of declaratory and injunctive relief, including disgorgement of fines resulting from the City's constitutionally deficient procedures and an injunction barring the City from issuing violations without an opportunity for a hearing or for an appeal.

98.   **Adequacy:** Mr. Katergaris will fairly and adequately protect the interests of the class he seeks to represent because their interests are aligned and there are no conflicts between him and the members of the putative class. Mr. Katergaris and members of the putative class have suffered the same injuries at the hands of the same defendant, and both are entitled to the same relief, in the form of declaratory and injunctive relief for the injury caused by these practices, including a mandatory injunction requiring disgorgement of the fines collected by the City pursuant to its constitutionally deficient system. All class members share the same interest in ensuring that the City's code-enforcement procedures respect the constitutional rights of property owners and in securing relief for those constitutional rights already violated.

99.   Mr. Katergaris is represented by counsel who will fairly and adequately represent the class. Mr. Katergaris is represented *pro bono* by William Maurer, Diana Simpson, Jared McClain, and William Aronin at the Institute for Justice (IJ). IJ is a nonprofit, public-interest law firm that, since its founding in 1991, has successfully litigated constitutional issues nationwide, including challenges to inadequate procedure in criminal and civil enforcement proceedings. IJ has also litigated several federal class actions and putative class actions involving property rights, including against the following municipalities: Philadelphia (*Sourovelis v. City of*

21

*Philadelphia*, No. 14-cv-4687, 2021 WL 244598, at *1 (E.D. Pa. Jan. 28, 2021) (appointing firm as class counsel and approving federal consent decree in challenge to civil forfeiture proceedings)); New York City (*Cho v. City of New York*, No. 16-cv-7961 (S.D.N.Y. Oct. 2, 2020) (ECF 111) (approving settlement of putative class action under which New York City agreed not to enforce agreements extracted through coercive property seizures)); and Pagedale, Missouri (*Whitner v. City of Pagedale*, No. 15-cv-1655 (E.D. Mo. May 21, 2018) (ECF 116) (appointing firm class counsel and approving federal consent decree prohibiting abusive ticketing practices)). IJ also litigated a significant Second Circuit case about due process, notice, and the opportunity to be heard in *Brody v. Village of Port Chester*, 434 F.3d 121 (2d Cir. 2005).

100.    The putative class also meets the requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure.

101.    The City has acted, or refused to act, on grounds generally applicable to the putative class. Declaratory and injunctive relief is appropriate with respect to all members of the class, including in the form of disgorgement of the fines paid by class members because of the City's constitutionally deficient processes.

102.    Alternatively, disgorgement is appropriate relief incidental to the class's declaratory and injunctive relief pursuant to Fed. R. Civ. P. 23(b)(2).

103.    The class is entitled to the requested relief.

**CAUSE OF ACTION**

**Due Process Clause of the Fourteenth Amendment to the U.S. Constitution via 42 U.S.C. § 1983 on behalf of Named Plaintiff Seraphim Katergaris individually and on behalf of all others similarly situated against Defendant City of New York**

104.    Plaintiff incorporates Paragraphs 1 through 103 by reference as though fully alleged in this Paragraph.

105.    This Count specifically relies upon the allegations that relate to the City's failure to provide a hearing or appeal for its unreviewable DOB violations, as detailed in paragraphs 16 to 85 above.

106.    Plaintiff brings this Count against the City based on its policy, practice, and custom of denying property owners who have received unreviewable DOB violations a hearing or an opportunity to appeal.

107.    The Due Process Clause of the Fourteenth Amendment requires that, before depriving a person of his or her property, the government must provide notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

108.    The City, acting under color of law, deprived Plaintiff and the members of the putative class of their property without due process of law in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

109.    The City had a duty under the Fourteenth Amendment to provide Plaintiff and the members of the putative class with notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

110.    The City violated its duty to ensure due process by denying Mr. Katergaris and the members of the putative class a fair or meaningful opportunity to be heard by:

   a.  Failing to provide any hearing regarding unreviewable DOB violations;

   b.  Depriving them of the opportunity to build and submit a record;

   c.  Issuing them notices of violation years after the violation purportedly occurred, thereby interfering with the ability of property owners to adequately defend themselves (because of the loss of documents, fading of memories, and

changes in circumstances and the condition of the property) even if the City

had provided a hearing;

d.   Not affording property owners access to a neutral—or, indeed, any—

adjudicator;

e.   Making decisions based entirely on the DOB's discretion and not providing

reasons for the DOB's decisions; and

f.   Failing to provide any avenue or right to appeal an adverse decision.

111.   The City's procedurally deficient system created an unreasonable risk of

erroneous deprivation of property—a result that did, in fact, occur in Mr. Katergaris's case.

112.   By requiring a full payment of a fine without any opportunity to challenge the

fine, the City effected a pre-hearing deprivation of Plaintiff and the members of the putative class

and denied them due process.

113.   Plaintiff and the members of the putative class possess fundamental property

interests protected by the Fourteenth Amendment to the United States Constitution in their

homes, possessions, earnings, income, and capital. These interests are of historical and

continuing importance.

114.   Defendant interfered with these interest by, among other things, (a) issuing

violations that cannot be contested, appealed, or reviewed and leaving only the option to pay or

default; (b) failing to provide a forum for the consideration of constitutional questions, (c) failing

to provide an avenue for appellate review; (d) issuing notices of violation years after they were

incurred, making it more difficult for Plaintiff and members of the putative class to find

witnesses and produce documents in their defense even if they had had an opportunity to present

such a defense and thereby increasing the likelihood of an erroneous deprivation of property, and (e) otherwise failing to provide process that guarded against the risk of erroneous deprivation.

115.    In so doing, the City deprived Mr. Katergaris and the members of the putative class of the process due to them under the Fourteenth Amendment to the United States Constitution.

116.    The City had the ability to provide sufficient process to Mr. Katergaris and the members of the putative class, and any burdens associated with doing so could not outweigh their constitutionally protected interest in a fair, open, and accurate process.

117.    The City's behavior was arbitrary and shocking to the conscience and was so brutal and offensive as to not comport with traditional ideas of fair play and decency.

118.    The City had no legitimate governmental interest in depriving Mr. Katergaris and the members of the putative class of their property without due process.

119.    The City conducted its failure to provide sufficient process to Mr. Katergaris pursuant to a policy, practice, or custom that violated the Fourteenth Amendment.

120.    As a direct and proximate result of the City's actions, Mr. Katergaris suffered irreparable injury to his constitutional rights.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief, on behalf of himself and all others similarly situated:

121.    An order certifying this action as a class action under Federal Rule of Civil Procedure 23(a) and 23(b)(2);

122.    Appointment of Named Plaintiff as representative of the class;

123.    Appointment of the Institute for Justice as class counsel;

25

124.    A declaratory judgment in favor of Plaintiff and against Defendant providing that the DOB's imposition of penalties on people without providing an opportunity to be heard and to appeal an adverse decision is unconstitutional both on its face and as applied to Plaintiff, and that, as a consequence, any policies, practices, or customs authorizing the City to do so are void and without effect;

125.    A declaratory judgment in favor of Plaintiff and against Defendant providing that the DOB's policy, practice, and custom of issuing notices of violation years after the violation purportedly occurred creates an unreasonable risk of error and that any policies, practices, or customs authorizing the City to so are void and without effect;

126.    A permanent injunction requiring the City to rescind any outstanding notices of violation issued since August 30, 2019, that do not provide for a hearing or an opportunity to appeal.

127.    A permanent injunction in favor of Plaintiff and against Defendant prohibiting Defendant, its officers, and/or its agents from issuing, enforcing, or collecting penalties associated with unreviewable DOB violations issued after August 30, 2019;

128.    A permanent injunction in favor of Plaintiff and against Defendant requiring Defendant to return to Plaintiff and all members of the putative class all penalties paid because of an unreviewable DOB violation since August 30, 2019;

129.    A permanent injunction in favor of Plaintiff and against Defendant requiring Defendant to serve notices of violation on respondents within a reasonable amount of time, not to exceed thirty (30) days after the DOB determines that a violation of the City's Construction Codes has occurred;

130.    An award of $1.00 in nominal damages. Plaintiff seeks this award for the class as a whole and does not request nominal damages for each class member;

131.    An award of Plaintiff's costs and expenses of this action, together with reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988; and

132.    Such other and further relief as this Court deems just and proper.

Dated: August 30, 2022                          Respectfully submitted,

S/ William Aronin
William Aronin (SDNY Bar No. WA0685)            William R. Maurer (Wa. Bar No. 25451)*
Diana K. Simpson (Co. Bar No. 43591)*           INSTITUTE FOR JUSTICE
Jared McClain (D.C. Bar No. 1720062)*           600 University Street, Suite 1730
INSTITUTE FOR JUSTICE                           Seattle, WA 98101
901 North Glebe Road, Suite 900                 P. (206) 957-1300
Arlington, VA 22203                             E. wmaurer@ij.org
P. (703) 682-9320
E. waronin@ij.org; diana.simpson@ij.org;
jmcclain@ij.org

*Attorneys for Plaintiff*

*\* Pro hac vice motions to be filed*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SERAFIM GEORGIOS KATERGARIS, | Case No. ___22-cv-7400___ |
| *Plaintiff*, | |
| v. | |
| CITY OF NEW YORK, | |
| *Defendant*. | |

**VERIFICATION OF PLAINTIFF SERAFIM GEORGIOS KATERGARIS**

I, Serafim Georgios Katergaris, declare as follows:

1.      I am the named Plaintiff in the above-captioned civil action.

2.      I have read the foregoing Complaint and know the contents thereof.

3.      The facts contained in this complaint, specifically those set out in paragraphs 12–13, 45–77, are true to my own knowledge, except those matters stated to be alleged on information and belief, which I reasonably believe to be true.

4.      If called upon, I would competently testify as to these facts and my knowledge.

5.      I verify under penalty of perjury that the foregoing is true and correct.

Executed on August 29, 2022.

Serafim Georgios Katergaris

1